# United States Court of Appeals
# for the Fifth Circuit

_____

No. 25-30698

_____

United States Court of Appeals
Fifth Circuit

**FILED**
July 14, 2026

Lyle W. Cayce
Clerk

VERNON SMITH; ET AL.,

*Plaintiffs*,

UNITED STATES OF AMERICA,

*Intervenor Plaintiff—Appellee*,

*versus*

SCHOOL BOARD OF CONCORDIA PARISH

*Defendant—Intervenor Defendant—Appellant*,

*versus*

DELTA CHARTER GROUP, INCORPORATED,

*Intervenor—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:65-CV-11577

_____

consolidated with

No. 25-30698 c/w
No. 26-30074

———————————

No. 26-30074
———————————

IN RE SCHOOL BOARD OF CONCORDIA PARISH,

*Petitioner.*

————————————————————————

Petition for a Writ of Mandamus
to the United States District Court
for the Western District of Louisiana
USDC No. 1:65-CV-11577

————————————————————————

Before STEWART, WILLETT, and WILSON, *Circuit Judges.*

DON R. WILLETT, *Circuit Judge*:

Few federal cases reach their seventh decade. This one did. Then every remaining party filed the one document that ends a case without a judge's involvement: a Rule 41(a)(1) dismissal. The district court refused to honor it.

That refusal reaches us in an unusual posture. We lack appellate jurisdiction over the School Board's direct appeal because the challenged orders are neither final decisions nor appealable injunction orders. But the mandamus petition raises a different question: whether a district court may go on adjudicating a case after every remaining party has dismissed it under Rule 41(a)(1)(A)(ii). It may not. Once the stipulation was filed, the case was over—and nothing the district court did afterward could change that. We therefore dismiss the appeal and grant mandamus.

2

No. 25-30698 c/w
No. 26-30074

\*       \*       \*

After more than sixty years of litigation, the district court dismissed the long-absent private plaintiffs in 2025. Hoping to bring the case to a close, the remaining parties—the United States, Delta Charter Group, and the School Board—jointly stipulated to dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

Ordinarily, that filing would have ended the case. Rule 41(a)(1)(A)(ii) provides that, subject to four enumerated exceptions, "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."[1] No court order is needed because the stipulation itself does the dismissing. The district court nevertheless issued a "Memorandum Ruling" stating that "it is not required that a court accept and enter a proposed stipulation of dismissal particularly when the protection of others and/or judicial or public policies are at issue." The court then ordered evidentiary hearings "to hopefully find that the parties have (or have not) reached sufficient *Green* factor compliance [2] to warrant a declaration of unitary status and dismissal."

The School Board appealed and, out of caution, filed a protective mandamus petition. It asks us to direct the district court to honor the stipulated dismissal, cancel the hearings, and vacate the challenged orders. The United States moved to dismiss the appeal for lack of jurisdiction. We agree that the appeal must be dismissed.

---

[1] FED. R. CIV. P. 41(a)(1)(A)(ii).

[2] *See Green v. Sch. Bd. of New Kent Cnty.*, 391 U.S. 430, 436–37 (1968) (setting out factors for courts to consider in determining whether a government has achieved a unified school system).

No. 25-30698 c/w
No. 26-30074

We have appellate jurisdiction over "final decisions" of district courts.[3] "A final decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[4] The challenged orders did the opposite. They did not end the litigation; they *prolonged* it by setting separate evidentiary hearings.

The School Board answers that the Rule 41 stipulation itself was final because it dismissed the case with prejudice. But that is not the order identified in the notice of appeal. The notice identifies the district court's Memorandum Ruling and subsequent scheduling order. Those orders did not end the litigation on the merits.

Nor does the collateral-order doctrine supply jurisdiction. That doctrine is "a narrow exception to the general rule that an appeal under § 1291 must await a final judgment on the merits."[5] To qualify, "an order must (1) 'conclusively determine the disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be effectively unreviewable on appeal from a final judgment.'"[6]

The district court's orders are not effectively unreviewable on appeal from a final judgment. The School Board says otherwise because the hearings will already have occurred by the time any later appeal can be taken. But the ordinary burdens of continued litigation do not make an interlocutory order immediately appealable. If they did, every refusal to dismiss on a threshold, non-merits ground would be appealable at once. That is not the law. Refusals

---

[3] 28 U.S.C. § 1291.

[4] *Hall v. Hall*, 584 U.S. 59, 64 (2018) (quotation omitted).

[5] *Marler v. Adonis Health Prods.*, 997 F.2d 1141, 1142 (5th Cir. 1993).

[6] *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

No. 25-30698 c/w
No. 26-30074

to dismiss for lack of personal jurisdiction or subject-matter jurisdiction are not immediately appealable.[7] Continued litigation makes an order effectively unreviewable only when the order denies a claimed immunity from suit.[8] The School Board claims no such immunity.

So there is no final judgment and no appealable collateral order. Section 1291 gives us no jurisdiction.

Section 1292(a)(1) fares no better. It gives us jurisdiction over "[i]nterlocutory orders . . . refusing to dissolve . . . injunctions.[9] But neither the Memorandum Ruling nor the scheduling order refused to dissolve an injunction. The district court scheduled hearings to decide whether the injunction should be dissolved. To be sure, the court rejected one asserted basis for ending the case—the parties' Rule 41 stipulation. But "an order having the practical effect of denying *a reason* for dissolving an injunction" is not "the same as an order having the practical effect of actually denying the dissolution."[10] We therefore lack jurisdiction under § 1292(a)(1).

Accordingly, we GRANT the United States's motion to dismiss the appeal.

The mandamus petition is another matter.

Mandamus is "a drastic and extraordinary remedy," not a workaday substitute for appeal.[11] A petitioner must show three things: (1) "no other adequate means to attain the relief" sought; (2) a "clear and indisputable"

---

[7] *Van Cauwenberghe v. Biard*, 486 U.S. 517, 526–27 (1988) (personal jurisdiction); *In re Phillips*, 844 F.2d 230, 235 (5th Cir. 1988) (subject-matter jurisdiction).

[8] *See, e.g.*, *Geo Grp., Inc. v. Menocal*, 146 S. Ct. 774, 781 (2026).

[9] 28 U.S.C. § 1292(a)(1).

[10] *Navy v. Sch. Bd. of St. Mary Par.*, 166 F.4th 550, 556 (5th Cir. 2026).

[11] *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).

right to the writ; and (3) that "the writ is appropriate under the circumstances."[12]

The School Board satisfies all three requirements.

First, the School Board has no adequate alternative means of relief. That conclusion does not follow merely because we lack appellate jurisdiction today. Mandamus does not exist to rescue every disappointed would-be appellant from the final-judgment rule. But this case is not about ordinary litigation cost or ordinary delay. It is about power: whether a federal court may keep exercising jurisdiction after the parties have ended the case by the very mechanism the Rules authorize.

Our Rule 41 cases make the answer dispositive. A stipulated dismissal under Rule 41(a)(1)(A)(ii) is effective immediately, and "any action by the district court after the filing of such a stipulation can have no force or effect because the matter has already been dismissed by the parties themselves without any court action."[13] The dissent's later-appeal theory assumes there will be a later order with legal force from which the School Board may appeal. Our precedent tells us the opposite. Once the stipulation was filed, later district-court action was a nullity. An appeal from a nullity is not an adequate remedy.

Nor is this simply a request to avoid "hardship . . . from delay."[14] The School Board does not ask us to accelerate a ruling that the district court is otherwise empowered to make. It asks us to prevent proceedings the district

---

[12] *In re Ilton, Inc.*, 883 F.3d 553, 568 (5th Cir. 2018) (quoting *Cheney*, 542 U.S. at 380–81 (internal quotation marks omitted)).

[13] *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (5th Cir. 2010) (per curiam).

[14] *See, e.g.*, *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964); *see also In re Willy*, 831 F.2d 545, 550 (5th Cir. 1987).

court has no authority to conduct. A court without jurisdiction cannot require parties to endure unauthorized adjudication as the price of obtaining review. That is the difference between inconvenience and the exercise of a power a court no longer holds.

Second, the School Board's right to relief is clear and indisputable. The governing rule is not obscure: "a Rule 41(a)(1)(A)(ii) stipulation of dismissal is effective immediately and renders subsequent action by the district court superfluous with no force or effect."[15] Put another way, the stipulation "automatically . . . strip[s] the district court of subject-matter jurisdiction."[16]

The dissent emphasizes that Rule 41(a)(1)(A) begins with a caveat: it is "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute."[17] True enough. But none of those exceptions applies. This is not a class action requiring Rule 23(e) approval, a derivative action under Rule 23.1(c), an unincorporated-association action under Rule 23.2, or a receivership under Rule 66. And no applicable federal statute requires district-court approval before these parties may dismiss. The existence of express exceptions in other cases does not create an implied exception here. It confirms the opposite: where the Rule specifies the conditions that limit self-executing dismissal, courts may not add a free-floating public-interest proviso of their own.

---

[15] *Whittier v. Ocwen Loan Servicing, L.L.C.*, 128 F.4th 724, 726–27 (5th Cir. 2025) (per curiam) (cleaned up).

[16] *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (citation omitted).

[17] FED. R. CIV. P. 41(a)(1)(A).

Nor do *Brown*, *Green*, or their progeny supply such an extension.[18] Those cases define the district court's duty while a desegregation case remains live and while judicial relief is being administered. They do not authorize a federal court to insist on adjudicating unitary status after every party with authority to litigate the case has ended it. Article III courts are not "roving commissions" charged with pronouncing constitutional questions after the case before them has been dismissed.[19] Federal courts resolve disputes. They do not require parties to continue having them.

The district court's contrary view rested on "the protection of others and/or judicial or public policies." We do not doubt the good faith behind that concern. School-desegregation decrees involve grave constitutional interests and often long institutional histories. But Rule 41 already accounts for categories of cases in which dismissal requires court approval. *Green v. Nevers*, the principal authority invoked for a "special interests" limitation, involved a minor-party settlement and a court's independent duty to protect the minor's interest.[20] It does not authorize a district court, in a case with no certified class and no remaining private plaintiffs, to override a signed stipulation by all remaining parties because the court believes a further public-interest inquiry would be prudent.

Nor does today's ruling immunize the School Board from future constitutional claims. Private parties who believe their rights are violated may sue. The United States, if it believes further enforcement is warranted, may

---

[18] *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954); *Green*, 391 U.S. 430.

[19] *See Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973); *see generally Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

[20] 111 F.3d 1295, 1301 (6th Cir. 1997).

act within lawful bounds. What Rule 41 forbids is keeping this case alive after the parties authorized to litigate it have dismissed it.

Third, mandamus is appropriate under the circumstances. The issue is not merely case-specific. Mandamus is "particularly appropriate" when an issue has "importance beyond the immediate case" and when district courts have developed inconsistent approaches to recurring questions. [21] The petition identifies inconsistent district-court treatment of stipulated dismissals in desegregation cases, and this case illustrates why a clear rule is needed. The rule is not hard to find: Unless one of Rule 41's enumerated exceptions or an applicable federal statute says otherwise, a stipulation signed by all appearing parties dismisses the action without a court order.

We add one clarification. We do not treat the United States as having agreed that mandamus should issue. In the related appeal, the United States moved to dismiss for lack of appellate jurisdiction and expressly stated that it "expresses no opinion regarding the Protective Petition." That matters. Our decision rests not on party concession, but on Rule 41's text and our binding precedent giving that Rule its self-executing effect.

The district court understandably wanted a clean ending to a case of uncommon age and consequence. But federal jurisdiction is not preserved by institutional memory, remedial caution, or the understandable desire for one more hearing. Once the remaining parties filed their Rule 41(a)(1)(A)(ii) stipulation, the case ended. From that point forward, the district court had nothing left to adjudicate. [22]

---

[21] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc) (citation omitted).

[22] Our recent decision returning a desegregation case to the district court for lack of an appealable order is not to the contrary. There, a live controversy remained—plaintiffs were actively pressing claims under Rule 60(b)(5). Here, a Rule 41 stipulation has

No. 25-30698 c/w
No. 26-30074

Accordingly, we GRANT the School Board's mandamus petition. The district court is ORDERED to vacate its Memorandum Ruling and subsequent order scheduling evidentiary hearings.

---

extinguished the controversy itself. The difference is between a case that continues and a case that is over. *See Navy*, 166 F.4th at 553–54.

No. 25-30698 c/w
No. 26-30074

CARL E. STEWART, *Circuit Judge*, concurring in part and dissenting in part:

I concur with the dismissal of the direct appeal for lack of jurisdiction. However, for the following reasons, I respectfully dissent from the grant of mandamus relief.

## I

This case has lasted for more than sixty years because Concordia Parish schools, which were formerly racially segregated, have not yet been declared unitary by a federal judge through the process set forth by *Brown v. Board of Education*, 347 U.S. 483 (1954), *Green v. County School Board of New Kent County*, 391 U.S. 430 (1968), and their progeny. In 1965, the Private Plaintiffs brought suit alleging a policy, practice, custom, and usage of segregation in Concordia Parish schools. As the district court aptly explained, although the Supreme Court directed school districts to desegregate with "all deliberate speed,"[1] "[i]t did not turn out that way." For the ensuing decades, school districts across the nation were tasked with "transition[ing] to a unitary, nonracial system of public education." *Green*, 391 U.S. at 436. Unitary status is achieved when a school district demonstrates that it has "(1) complied in good faith with desegregation orders for a period of at least three years and (2) eliminated the vestiges of prior de jure segregation to the extent practicable." *Borel v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307, 314 (5th Cir. 2022) (citation omitted). Concordia Parish has not yet been declared unitary.

The district court dismissed the Private Plaintiffs' claims without prejudice in 2025. Thus, at this point, there are three parties remaining in this case: (1) Intervenor-Plaintiff the United States (the "Government");

---

[1] *Brown v. Bd. of Educ.*, 349 U.S. 294, 301 (1955).

No. 25-30698 c/w
No. 26-30074

(2) Defendant, the School Board of Concordia Parish (the "School Board"); and (3) Intervenor Delta Charter Group, Inc.[2] On August 15, 2025, all three parties purported to "jointly and voluntarily stipulate to dismiss th[e] action with prejudice" pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). On November 19, 2025, the district court effectively rejected the stipulation, reasoning that it need not accept a stipulated dismissal, "particularly when the protection of others and/or judicial or public policies are at issue." The district court emphasized its lack of intent to prolong the litigation and acknowledged that it was the parties' wishes that the case come to an end as soon as possible. Thus, it subsequently scheduled an evidentiary hearing for January 9, 2026, and an additional hearing for February 5, 2026, to determine whether unitary status had been achieved such that dismissal was warranted.

The School Board appealed the order setting an evidentiary hearing, and later filed a separate petition for a writ of mandamus asking this court to direct the district court to vacate its order setting the hearing and effectively bring this case to a close.

## II

"A writ of mandamus is 'a drastic and extraordinary remedy reserved for really extraordinary cases.'" *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (quoting *In re Depuy Orthopedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017)). As to the petition for writ of mandamus, the panel majority concludes that the School Board is entitled to mandamus relief because (A) we lack jurisdiction to hear the appeal so there is no alternative adequate means of relief, (B) the district court was stripped of jurisdiction after the parties entered the 41(a)(1)(A)(ii) stipulation, and (C) relief is warranted

---

[2] Delta Charter Group intervened "for the purpose of obtaining authorization from th[e] court to form a charter school in Concordia Parish."

because district courts have come to differing conclusions when presented with the same or similar situations. I disagree.

## A

The first requirement for mandamus relief is that the petitioner has "no other adequate means to attain the relief" sought. *In re Ilton, Inc.*, 883 F.3d 553, 568 (5th Cir. 2018) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (internal quotation marks omitted)). This means that the "error presented is truly irremediable on ordinary appeal." *JPMorgan Chase & Co.*, 916 F.3d at 499 (cleaned up). The panel majority reasons that this requirement is met because direct appeal is unavailable before the district court holds the evidentiary hearing.

However, the error presented (if it is an error) is remediable on direct appeal—in due course. The panel majority concludes, and I agree, that we lack jurisdiction to hear the direct appeal of the order scheduling the evidentiary hearing. Ordinarily, that would mean the direct appeal is dismissed and the district court would proceed to determine whether the School Board has established evidence of unitary status. If at that time, the district court denied the School Board unitary status,[3] and continued on with this case, the dispute would then come within this court's jurisdiction as an "[i]nterlocutory order[] . . . refusing to dissolve . . . [the] injunctions." 28 U.S.C. § 1292(a)(1). We would then have jurisdiction to consider whether the district court should have accepted the parties' joint stipulation to dismissal.

---

[3] Of course, there is no way to know at this time whether the district court would determine that the School Board has achieved unitary status because no evidentiary hearing has been held and no findings have been made.

13

But the School Board argues that it need not wait until the district court enters such an order. It argues that even if this court does not have jurisdiction, mandamus is appropriate because any relief would only become available after the evidentiary hearing on unitary status. But that reasoning is contrary to the purpose of mandamus relief.

"It is, of course, well settled, that the writ is not to be used as a substitute for appeal . . . even though hardship may result from delay and perhaps unnecessary trial." *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964); *In re Willy*, 831 F.2d 545, 550 (5th Cir. 1987) ("Mandamus cannot be used as a substitute for appeal even when hardship may result from delay.") (holding that although an administrative law judge could not enforce its own discovery order, the party had to wait until after the administrative trial to address the discovery issue in their petition for review), *aff'd sub nom. Willy v. Coastal Corp.*, 503 U.S. 131 (1992). Where a party seeks the same relief in their direct appeal and a petition for mandamus, the fact that a direct appeal is not available does not necessarily mean that there are no alternative means for relief. *See ACL Co., LLC v. Espinoza,* 32 F. App'x 128, *1 (5th Cir. 2002) (dismissing the direct appeal for lack of jurisdiction and denying the petition for mandamus relief because other relief was available through direct appeal).

In this case, the panel majority grants mandamus relief to a party that has shown no more than mere inconvenience, allowing this extraordinary remedy to be used for precisely what it was *not* meant to be: a substitute for appeal. The only purported hardship the School Board cites is the district court's scheduling of an evidentiary hearing. But upon the parties' filing of the joint stipulation and its rejection of it, the district court moved with urgency to schedule a hearing to determine whether this case should be brought to a close. In the order that is the subject of the mandamus petition, the district court set dates for just fifty-one and seventy-eight days after the

No. 25-30698 c/w
No. 26-30074

order. At no point did the parties move the district court to further accelerate or reschedule the hearing, nor did they cite—to this court or the district court—any harm that would result from holding an evidentiary hearing (e.g., some loss of funding, impact on the quality of education, loss of special education services, or other direct impact). Clearly, this is not a case where the district court has refused to rule or to do so in a timely manner.

Moreover, the district court did not deny the parties relief at all but, at best, merely delayed relief so that the proper procedure could be employed to determine whether unitary status has been achieved. Nothing in the district court's ruling or order obstructs the parties from seeking relief, or evinces any intent to extend this litigation. As the district court explained:

> We have no desire nor predilection to complicate this case longer. However, we believe we are obliged under *Brown* and its progeny to reach a conclusion based on the record, based on evidence such that we may be able to make specific findings as to the *Green* factors. . . .

> In requiring these hearings, it is not the intention of the court to prolong the litigation any further, as the court understands the proposed Rule 41 stipulation represents the stated wish of the remaining parties to effect an end to this sixty-year-old case. That said, neither is it this court's wish to prolong things beyond that necessary to have a showing of unitary status on the record.

The district court read *Brown* and *Green* to require it to determine whether unitary status has been achieved before accepting a stipulated dismissal.[4]

---

[4] Even assuming that the panel majority disagrees with that interpretation, that disagreement does not give rise to entitlement of mandamus relief. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (explaining that a misinterpretation of the law or abuse of discretion is insufficient to warrant mandamus relief); *see also infra* II.B.

15

No. 25-30698 c/w
No. 26-30074

Notably, if the parties had proceeded with this case as instructed by the district court in November 2025, then by this time in July 2026, the hearings would have been long passed and the district court likely would have ruled.[5] Instead, the School Board both appealed and filed a mandamus petition in our court—extending the very litigation it insists must end, while failing to cite any reason that the scheduled hearings would impose any hardship on the School Board or Concordia Parish schools.

In granting mandamus relief, the panel majority is, to my regret, usurping the time-honored power of the district court to manage its own docket, without any showing of hardship, thereby stretching the meaning and availability of mandamus relief to placate the parties in this crucial institutional case. *See Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010) ("District court judges have broad discretion in managing their own dockets."). It is a mistake to allow the grant of mandamus relief in lieu of an appeal that indisputably would have been available after the scheduled evidentiary hearing, regardless of its outcome. The question is not whether an appeal could lie but merely when. The fact that the appeal would not ripen until several weeks or months after the parties desired is not the same as situations where an appeal, or another adequate means of relief, is truly unavailable. Alacrity is not the same as hardship.

In sum, the School Board attempts to circumvent the jurisdictional statutes to avoid the inconvenience of an evidentiary hearing, after which relief would be available if the parties wished to pursue that relief. The

---

[5] In December 2025, the district court granted a discretionary motion to stay the case pending resolution of the instant appeal. In doing so, it provided that granting the stay "[d]id not in any way concede that Defendants are correct in their view."

availability of that relief is sufficient alone to deny mandamus, but I continue on to the other two requirements for purposes of completeness.

**B**

The second requirement for mandamus relief is that the "right to issuance of the writ is clear and indisputable." *In re Ilton, Inc.*, 883 F.3d at 568 (quoting *Cheney*, 542 U.S. at 380–81). This requirement is only met if there has been a "'clear abuse of discretion that produced patently erroneous results' or . . . 'there has been a usurpation of judicial power.'" *JPMorgan Chase & Co.*, 916 F.3d at 500 (cleaned up) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). A "showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion" is insufficient. *Id.* (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015)). The panel majority reasons that this requirement is met because the mere fact of the parties' purported Rule 41(a)(1)(A)(ii) dismissal essentially opens and shuts this matter.

In my view, that argument proves too much. The panel majority is correct that Rule 41(a)(1)(A)(ii) dismissals are effective upon entry and do not require action on the part of the district court. *See, e.g.*, *Whittier v. Ocwen Loan Servicing, L.L.C.*, 128 F.4th 724, 726–27 (5th Cir. 2025) (per curiam). But those cases, and the panel majority, presume that the parties' purported stipulation of dismissal was effective. Federal Rule of Civil Procedure 41(a)(1)(A)(ii) provides for stipulated dismissals only "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute." Thus, a district court facing a purported stipulated dismissal may indeed need to take action to determine whether other Rules interfere with blanket acceptance that it has been deprived of all jurisdiction. Regardless of whether Rules 23(e), 23.1(c), 23.2, and 66 apply to these circumstances, they offer evidence that stipulated dismissals may be limited by certain circumstances such that

a district court must take further action to determine the validity of the stipulated dismissal. And as the district court recognized, other federal courts have declined to permit voluntary dismissals where there are special interests at stake. *See, e.g.*, *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997) (holding that it need not accept the parties' voluntary stipulated dismissal under Rule 41(a) because a party to the case represented a minor, and the court "would have been remiss if it had not made an independent determination that the settlement was in the minor's best interest").

The hesitance to merely accept the parties' stipulation of dismissal is further supported by the Supreme Court's directions in *Brown*, *Green*, and their progeny as to who decides whether unitary status has been achieved and how. Rather than wait for the district court to determine whether unitary status has been achieved, as Supreme Court and Fifth Circuit case law instructs, the parties in this case have essentially decided amongst themselves that unitary status has either been achieved or is no longer necessary. And they now ask this court to encroach upon the district court's role by blessing their attempts to undermine its authority in this established legal process. I would reject their invitation.

Further, with due respect to the panel majority, if the right to the writ was indisputable, it would have been clear and readily apparent at the time this petition was filed on February 12, 2026. No matter how much case law is parsed in microscopic detail, the right requested is far from clear, let alone indisputable. Axiomatically, this petition is not presented on direct appeal. Were it so, the standards of review for that appeal would be in play for the panel. Instead, it is presented as a petition for mandamus relief, which is a "*drastic and extraordinary* remedy." *In re JPMorgan Chase & Co.*, 916 F.3d at 499 (emphasis added) (quoting *In re Depuy Orthopedics, Inc.*, 870 F.3d at 350). Today, the panel majority renders a drastic and extraordinary order in a case

No. 25-30698 c/w
No. 26-30074

that, to my eyes, does not warrant it—and in doing so, turns the second requirement for mandamus relief on its head.

At minimum, the significant questions raised as to this mandamus requirement establish that the School Board's entitlement to the writ is not clear and indisputable as is required to grant the extraordinary remedy of mandamus relief. *See In re Ilton, Inc.*, 883 F.3d at 568. And of course, as discussed *supra*, it is far from clear and indisputable that this is not the only means through which the School Board can obtain relief in this case.

## C

The third requirement for mandamus relief is that "the writ is appropriate under the circumstances." *In re Ilton, Inc.*, 883 F.3d at 568 (quoting *Cheney*, 542 U.S. at 380–81). Because the first two requirements have not been met, it goes without saying that issuance of the writ is not appropriate here.

## III

We are reminded that this is an institutional case, involving the desegregation of Concordia Parish Schools. It is particularly important in such cases—involving, for example, school desegregation, prison conditions, or hospitals—to give deference to the district court that has been superintending the case for years or decades, before we take mandamus relief from our appellate toolbox and use it to restrict or undermine the authority of district courts. These cases involve numerous individuals, core constitutional rights, and are definitionally complex. This court should heed the fact that the district court was cautious about accepting the stipulation of dismissal, particularly where the Government's litigation posture and strategy has changed abruptly and measurably from the previous decades in the case. The district court is uniquely situated and aware of the

19

circumstances surrounding that pivotal change. To my eyes, it is a stretch to conclude inferentially or otherwise that the district court here is blocking a standard settlement that parties are willing to make, as we could see in other contexts. There is more here than meets the eye.

Our precedent does not provide that delay is tantamount to denial for the purpose of mandamus relief, nor does it permit parties to short-circuit our appellate process by petitioning for mandamus where an appeal does not yet lie. The School Board comes to our appellate court first to appeal, and second to ask our three appellate judges to assist them in bypassing the district court proceedings—despite the fact that they provide no binding case law providing that mandamus relief is warranted under these specific circumstances, or that a Rule 41(a) stipulation of dismissal can be used in this manner. The School Board requests that we take an extraordinary action using an extraordinary vehicle to give them relief that they are *not* indisputably entitled to. It is not within the sound purview of an appellate court to acquiesce to such a request.

## IV

In sum, it is a mistake for this court to allow mandamus to act as a substitute for an appeal. Likewise, it is a square misstep for this court to clip the wings of a seasoned district court judge, with his arms firmly around this decades-old institutional case, who is familiar with the complex legal history, Concordia Parish schools, the relevant geography, the parties in this case, and the Government's recently-changed posture and strategy. Therefore, I respectfully dissent from the grant of mandamus relief.